**ORIGINAL**

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| DENISE BOWERS, | : | |
| | : | 08-185 |
| Plaintiff, | : | Civil Action No. _____ |
| | : | Jury Trial Demanded |
| v. | : | |
| | : | |
| CITY OF WILMINGTON, a municipal | : | |
| government; MONICA GONZALEZ | : | |
| GILLESPIE, individually and in her official | : | |
| capacity as the Director of Personnel for the | : | |
| City of Wilmington; and FRANKLIN | : | |
| AMPADU, M.D., individually and in his | : | |
| official capacity as the Police Surgeon for | : | |
| the City of Wilmington, | : | |
| | : | |
| Defendants. | : | |

**COMPLAINT**

1. This is a civil action for compensatory and punitive damages and injunctive relief that arose out of the deprivation of plaintiff's procedural due process rights under the Fourteenth Amendment of the United States Constitution in violation of 42 U.S.C. §1983. Plaintiff's employment was terminated by written order of the Police Chief pursuant to authority under the City of Wilmington Code. The defendants did not comply with the procedures for the termination and involuntary retirement as explicitly required by the City of Wilmington Code and thereby violated plaintiff's rights and caused harm to plaintiff.

**JURISDICTION AND VENUE**

2. The claims set forth herein arise and are instituted pursuant to 42 U.S.C. §1983. Defendants, acting under color of the laws of the City of Wilmington and State of Delaware, deprived plaintiff of a right, privilege, and immunity secured by the Fourteenth Amendment to the United States Constitution.

1

3. This Court has original jurisdiction pursuant to 28 U.S.C. §1331 and §1343(a)(3) and 42 U.S.C. §1983. Declaratory relief is sought under 28 U.S.C. §§2201 and 2202.

4. The acts alleged herein were committed within the State of Delaware.

## THE PARTIES

5. The plaintiff, Denise Bowers, is a citizen of the United States and is a resident of New Castle County, State of Delaware. For twenty years, plaintiff was employed as a police officer by defendant City of Wilmington (the "City") and held the rank of Sergeant at the time of her termination.

6. The defendant City of Wilmington is a municipal government existing under the laws of the State of Delaware pursuant to 40 Del. Laws, Chapter 179, as amended by 46 Del. Laws, Chapter 236, within the Code of the City of Wilmington, Art. I, §1-100.

7. The defendant Monica Gonzalez Gillespie is the Director of Personnel for the City of Wilmington. Suit is filed against her individually and in her official capacity.

8. The defendant Franklin Ampadu, M.D. is the Police Surgeon for the City of Wilmington. Upon information and belief, he provides medical services as an employee of the City through a contractual agreement with the City of Wilmington. He served as the medical representative of the City in this termination and involuntary retirement issue. Suit is filed against him individually and in his official capacity.

9. At all times relevant hereto, the defendants were acting within the course and scope of their employment and/or were exercising powers conferred on them under color of the laws of the City of Wilmington and State of Delaware.

## FACTS GIVING RISE TO THE ACTION

10. On or about October 6, 1986, defendant City of Wilmington hired plaintiff as a police officer. The Wilmington Police Department continued to employ plaintiff from October 6, 1986 to August 3, 2007.

11. On December 13, 2005, plaintiff participated in a combat shooting training exercise at the Police Firearms Range. During the exercise, plaintiff sustained a right knee injury and subsequently endured substantial medical treatment including arthroscopy, partial lateral meniscus excision and chondroplasty. Due to the knee injury, plaintiff was temporarily totally disabled from her employment.

12. On or about February 16, 2007, plaintiff received a letter from the Chief of Police, Michael J. Szczerba, informing her that she had been terminated from her employment and would be placed on retirement pension pursuant to his authority under the City of Wilmington Code and the City of Wilmington Police Pension Act of 1984. The letter noted that her termination was effective March 9, 2007 and directed her to turn in all her departmental clothing and police equipment by such date.

13. Shortly after receipt of the Chief's letter, plaintiff received telephone calls at her residence from the Police Human Resources Division, directing her to immediately turn in her police equipment or otherwise face disciplinary action. In order to avoid the threatened disciplinary action, plaintiff complied with the order and turned in her police equipment. As a result, plaintiff suffered significant emotional distress because she was dismayed that her dedicated twenty year police career was now being cast aside with such callousness.

14. On February 21, 2007, plaintiff sought the assistance of counsel to review the circumstances and evaluate the defendants' actions. On February 21, 2007, a letter was

submitted to defendant Gillespie. The letter indicated that the Police Department (and thereby the City) had been noncompliant with City of Wilmington Code §§ 39-126 and 39-214. Under these sections, a police officer cannot be terminated and placed on involuntary retirement until the Chief of Police has provided notice of his intention to retire the officer and the officer has had "a fair opportunity of being heard in opposition thereto." Furthermore, the police officer may not be placed on retirement until the officer's physical condition has been examined by a "board of physicians, consisting of the police surgeon of the city, the family physician of such police officer, and a third reputable physician of the city to be selected by the other members of such board." The board of physicians must submit a report to the Chief of Police, indicating how much the police officer is incapacitated from performing regular active duty in the police department. The letter informed defendant Gillespie that plaintiff had not been given either an opportunity to be heard in opposition or the appropriate examinations by a board of physicians.

15. Defendant Gillespie responded telephonically to the letter, suggesting that the Chief of Police had "jumped the gun" and she indicated that the involuntary retirement would be rescinded. A letter was sent to defendant Gillespie, requesting that she distribute a notice to all relevant City departments, advising them that the involuntary retirement had been rescinded. Defendant Gillespie failed to distribute a notice and, consequently, plaintiff continued to receive written communications from the City, informing her that her employment benefits, such as medical insurance, dental coverage, life insurance, etc. would be terminated as of April 1, 2007. Although these benefits ultimately were not terminated at that time, plaintiff endured significant additional emotional distress due to the potential loss of such benefits and the impact it would have on her and her family.

16. A second letter was sent to defendant Gillespie, which again requested that she issue a notice to all relevant City departments that the plaintiff's involuntary retirement had been rescinded. On or about March 15, 2007, Chief Szczerba issued a letter stating that plaintiff's involuntary retirement had been rescinded until the City Code provisions had been fulfilled and finalized.

17. Plaintiff received a notice from PMA Management Corporation ("PMA"), the City's workers compensation third party administrator, directing plaintiff that Dr. David Stephens must examine her. Plaintiff was aware that she was required by workers compensation statutes to attend this examination in order for PMA to determine whether she was still eligible for the workers compensation benefits that she was currently receiving. She did attend the examination.

18. Dr. Stephens later submitted a report to PMA indicating that plaintiff was ready for full-time sedentary level work. The report further indicated that plaintiff should be reevaluated in six months to determine if she could do higher levels of work activity.

19. Plaintiff then received a letter from PMA, advising her that PMA would no longer pay for medical treatment for her work injury, based on Dr. Stephens' medical examination and report. As a result, plaintiff endured significant emotional distress due to the perceived inability to continue medical treatment of her work-related injury through her workers compensation benefits.

20. Plaintiff then received a letter from Chief Szczerba informing her that effective August 3, 2007, she would again be placed on involuntary retirement. Knowing that the City Code's required board of three physicians had not examined her, she incurred additional significant emotional distress because she was again involuntarily placed on the retirement list, even though the required provisions of the City Code had still not been fulfilled.

21. A request was made to defendant Gillespie for a copy of the board of physicians report. Defendant Gillespie was also advised that plaintiff was contesting her involuntary retirement and that she requested a fair opportunity to be heard in opposition. Furthermore, defendants were asked to calculate the accumulated vacation, sick time, and compensatory time that may be due to plaintiff.

22. Defendant Gillespie submitted a letter to plaintiff's counsel, enclosing a copy of the board of physicians report and advising that the plaintiff had to contact the City Treasurer in order to contest the termination and involuntary retirement. Defendant Gillespie indicated that the board of physicians consisted of Dr. Cynthia Heldt, Dr. David Stephens and defendant Dr. Franklin Ampadu. This is when plaintiff first learned that the evaluation by Dr. Stephens was actually performed for the involuntary retirement process, even though she had received notice that the evaluation was for workers compensation purposes. Plaintiff also learned for the first time that the City was indicating that her own doctor had allegedly examined her when plaintiff knew that was not true. The letter further stated that the City Treasurer had decided that the termination and involuntary retirement would remain effective for August 3, 2007, despite the City Code requirement that she could not be terminated until heard in opposition.

23. Upon information and belief, defendant Dr. Ampadu authored and/or approved the board of physicians report, knowing that it was filled with significant inaccuracies and/or falsehoods, because neither Dr. Heldt nor Dr. Stephens had performed the necessary medical examination and medical records review required by the City Code provisions. Dr. Heldt had never examined plaintiff for retirement purposes nor reviewed her medical records in regards to her ability to perform as a full duty police officer. Dr. Stephens had examined plaintiff under the auspices of the workers compensation statute and had not provided the information required by

the City Code for the Chief's decision on retirement. Yet, in the board of physicians report, defendant Dr. Ampadu indicated that it was the opinion of the board of physicians that plaintiff was "unable to perform the essential functions of a full duty Police Officer for the Wilmington Police Department."

24. On August 3, 2007, plaintiff was placed on involuntary retirement from the Wilmington Police Department. Plaintiff's salary, employment benefits and opportunity to return to full duty in the future were abruptly halted. Plaintiff was distraught as a result.

25. On or about August 10, 2007, a letter was sent to defendant Gillespie, advising her that plaintiff's rights were being intentionally violated because plaintiff had been involuntarily terminated and retired, contrary to the express provisions of the City of Wilmington Code that provided an opportunity to be heard in opposition prior to the actual termination and involuntary retirement. The letter also advised defendant Gillespie that plaintiff intended to contest the board of physicians report on the grounds that it was factually inaccurate and potentially false and was noncompliant with the City Code requirements. Defendant Gillespie was informed that plaintiff's family doctor, Dr. Heldt, had not conducted a medical examination of plaintiff's physical condition or a review of her medical records. Furthermore, the letter indicated that Dr. Stephens, the third physician selected by Dr. Heldt and defendant Dr. Ampadu, had evaluated plaintiff solely for workers compensation purposes and not for City Code retirement requirements. Copies of this letter were separately sent to Mayor James Baker, City Solicitor John Sheridan, and City Treasurer Henry Supinski.

26. No response was received to this letter.

27. Dr. Heldt submitted a letter to plaintiff, explaining that defendant Dr. Ampadu had contacted her via telephone sometime during the summer, in order to solicit the name of a

7

physician that could act as a third party medical doctor to evaluate plaintiff's case for continued disability. Both doctors agreed to Dr. Stephens. In her letter, Dr. Heldt further confirmed that she had not examined plaintiff nor reviewed any of plaintiff's medical records in regards to plaintiff's knee injury. She stated that she had only provided a hypothetical "off the cuff statement" about plaintiff's physical ability to perform as a police officer. She indicated that the conversation was not a formal consultation or meeting but simply a discussion over the phone with a colleague.

28. On or about September 14, 2007, defendant Gillespie sent a letter, acknowledging her awareness that "no police officer may be retired without a fair opportunity to be heard in opposition thereto." The letter indicated that the plaintiff could present her opposition to the termination and involuntary retirement to the Police Pension Board on October 4, 2007.

29. Defendant Gillespie was absolutely aware that plaintiff had already been terminated and involuntarily retired on August 3, 2007 and knew that no police officer could be terminated and involuntarily retired until a fair opportunity to be heard in opposition was provided. Defendant Gillespie also knew that the October 4th hearing would be the plaintiff's first opportunity to be heard in opposition, but she took no action to remedy the obvious error committed by the City in terminating and retiring plaintiff prior to her opportunity to be heard in opposition.

30. Due to a scheduling conflict, the October 4th Police Pension Board Hearing was rescheduled. A new hearing date was set for December 12, 2007. On December 7, 2007, the City abruptly postponed the hearing without explanation. It was subsequently rescheduled for January 10, 2008. On December 28, 2008, the City Law Department was again informed of the

deficiencies with her medical report and the termination status, but failed to address the issues prior to the hearing.

31. On January 10, 2008, plaintiff appeared before the Police Pension Board and presented her opposition to the involuntary retirement. Both Chief Szczerba and defendant Gillespie were members of the Pension Board. Upon request, Chief Szczerba agreed to recuse himself from the deliberations and decisions of the Pension Board, yet defendant Gillespie refused to recuse herself from the deliberations and decisions of the Pension Board. After the presentation of plaintiff's opposition, including exhibits providing the statutory language and noncompliance with the required medical reviews, the Police Pension Board affirmed the Chief's decision to terminate plaintiff, accepted as credible the board of physicians report authored by defendant Dr. Ampadu, and affirmed the termination and involuntary retirement of plaintiff. Despite the Pension Board's ruling that the board of physicians report was credible, that the termination and involuntary retirement was therefore valid, and that plaintiff should be placed on retirement pension, the Board nonetheless referred plaintiff for a physical examination to be conducted by Dr. Heldt, and her opinion to then be transmitted to defendant Dr. Ampadu and Dr. Stephens. Plaintiff questioned the Pension Board as to why they had just decided all the issues in the matter but then would now order an evaluation by Dr. Heldt when they had just accepted the report of Dr. Ampadu, which stated that Dr. Heldt had already performed the examination and provided an opinion on plaintiff's medical condition.

32. On or about January 23, 2008, defendant Gillespie submitted a letter to plaintiff, informing her that the City had scheduled an appointment for plaintiff for an examination with her family physician, Dr. Heldt. The letter noted that plaintiff's medical records had been submitted to Dr. Heldt for review.

33. On or about January 29, 2008, a letter was sent to defendant Gillespie, informing her that because the Pension Board had already determined that defendant Dr. Ampadu's report had been credible, and therefore determined that Dr. Heldt had performed an appropriate evaluation, no justifiable reason existed for the new evaluation. The letter also noted that if the Pension Board had questions about Dr. Heldt's evaluation, then it should not have deemed defendant Dr. Ampadu's report valid and should have deferred its ruling. Subsequently, plaintiff did not attend the appointment with Dr. Heldt.

34. Plaintiff continues to be on involuntary retirement even though she was never examined by a board of physicians or given a fair opportunity to be heard in opposition prior to her termination on August 3, 2007 by written order of the Police Chief. These events and obvious violations of the City Code have caused significant anger, anxiety, and sadness for plaintiff.

## CLAIMS ARISING UNDER 42 U.S.C. §1983

35. By virtue of plaintiff's employment with the Wilmington Police Department (and thereby defendant City of Wilmington) from October 6, 1986 through August 3, 2007, the plaintiff had an expectation of continued employment with the Wilmington Police Department.

36. The aforesaid expectation of continued employment amounts to a property interest which exists under the laws of the State of Delaware and is subject to the protections afforded by the Due Process Clause of the Fourteenth Amendment to the United States Constitution.

37. The actions of the defendants as set forth in Paragraphs 1 through 34 above amounted to a deprivation of the plaintiff's property right to continued employment in violation of the plaintiff's right to procedural due process under the Fourteenth Amendment to the United States Constitution which is actionable under 42 U.S.C. §1983. Specifically:

10

(a) Defendant Dr. Ampadu, individually and/or as an agent of the defendant City of Wilmington, authored and/or approved a board of physicians report that was factually inaccurate and potentially false, and submitted it to the Police Pension Board. More specifically:

(i) Defendant Dr. Ampadu knew or should have known that plaintiff's family physician, Dr. Heldt had not physically examined plaintiff for termination or involuntary retirement purposes;

(ii) Defendant Dr. Amapadu knew or should have known that Dr. Heldt had not reviewed plaintiff's medical records for termination or involuntary retirement purposes;

(iii) Defendant Dr. Amapadu knew or should have known that Dr. Heldt did not provide a statement or opinion regarding whether plaintiff was incapacitated from performing regular active duty in the police department as required by the City Code in termination and involuntary retirement proceedings;

(iv) Defendant Dr. Ampadu knew or should have known that the City's workers compensation administrator had retained Dr. Stephens for the purpose of examining plaintiff for eligibility for continued workers compensation benefits and not for involuntary retirement purposes;

(v) Defendant Dr. Ampadu knew or should have known that Dr. Stephens did not examine plaintiff for termination or involuntary retirement purposes;

(vi) Defendant Dr. Ampadu knew or should have known that any statement or opinion about plaintiff's ability to perform her job duties made by Dr. Stephens was in relation to the workers compensation claim and that Dr. Stephens did not provide a statement or opinion about plaintiff's capacity to perform regular active duty in the police department in reference to the termination or involuntary retirement proceedings as required by the City Code.

(vii) Despite this knowledge, Defendant Dr. Ampadu authored and/or approved a board of physicians report containing false and/or inaccurate statements. In particular, the report indicated that defendant Dr. Ampadu, Dr. Heldt, and Dr. Stephens agreed that plaintiff was "unable to perform the essential functions of a full duty Police Officer." This statement was presented even though Dr. Heldt had not examined plaintiff or her medical records for termination and involuntary retirement purposes and had not provided a statement or opinion concerning plaintiff's capacity to perform regular active duty in the police department and that Dr. Stephens had only examined plaintiff for workers compensation purposes;

(viii) Defendant Dr. Ampadu knew or should have known that his actions in authoring and/or approving this false or inaccurate board of physicians report would have a significant impact on plaintiff's employment. These actions individually or in total constitute malicious and/or wanton acts in violation of plaintiff's federally protected rights.

(b) Defendant Gillespie, individually and as an employee of the defendant City of Wilmington, knew that under City of Wilmington Code §§39-126 and 39-214, a police officer may not be terminated and involuntarily retired without both a fair opportunity of being heard in opposition and an examination by a board of physicians. Despite this knowledge, defendant Gillespie intentionally advanced and then allowed the adverse actions described herein to occur. Plaintiff was notified on two separate occasions that her employment was terminated and she was involuntarily retired, even though defendant Gillespie knew that the City Code's requisite provisions had not been fulfilled. More specifically:

(i) Defendant Gillespie knew that plaintiff would be terminated and involuntary retired on March 9, 2007 from her employment with the City;

12

(ii) Defendant Gillespie was informed that the process for termination and involuntary retirement pursuant to the City Code had not been completed because plaintiff had not been examined by a board of physicians or been provided a fair opportunity to be heard in opposition;

(iii) Defendant Gillespie acknowledged that the March 2007 process for termination and involuntary retirement had not been properly performed and therefore rescinded plaintiff's involuntary retirement;

(iv) After rescinding the March 2007 termination and involuntary retirement, defendant Gillespie failed to timely notify other City departments, causing notices to be sent to plaintiff advising her of the cancellation in her health and insurance benefits.

(v) Defendant Gillespie knew or should have known that plaintiff had not been examined nor her medical records reviewed by Dr. Heldt at any time prior to the August 2007 termination and involuntary retirement;

(vi) Defendant Gillespie knew or should have known that plaintiff had been ordered to attend an examination with Dr. Stephens under the auspices of the Delaware Workers Compensation Act and not for termination and involuntary retirement issues.

(vii) Defendant Gillespie knew that terminating plaintiff would cause all salary and employment benefits to cease and a retirement pension would not start until the Police Pension Board affirmed the involuntary retirement;

(viii) Defendant Gillespie knew or should have known that the deprivation of salary and employment benefits would likely create a severe hardship on plaintiff;

(ix) Defendant Gillespie knew that plaintiff was again terminated and involuntarily retired on August 3, 2007, more than five months before any hearing;

(x) Despite acknowledging in March 2007 that the termination and involuntary retirement proceedings had not been properly performed and knowing that the City had still not properly performed the City Code requirements, defendant Gillespie did not attempt to rescind plaintiff's August 2007 termination and involuntary retirement. Instead, in direct contradiction to the express provisions of the City Code, Defendant Gillespie allowed plaintiff to be terminated from her employment prior to her fair opportunity to be heard in opposition before the Police Pension Board. These actions individually or in total constitute malicious and/or wanton acts in violation of plaintiff's federally protected rights.

(c) Defendant City of Wilmington, through the information timely provided to the Personnel Department and the Law Department, could have prevented or mitigated the harm caused to plaintiff. More specifically:

(i) Defendant City of Wilmington knew or should have known that the board of physicians report was not credible because it had evidence demonstrating that plaintiff had not been properly examined by the board of physicians nor had the board reviewed her medical records as required in the City Code involuntary retirement procedures;

(ii) Defendant City of Wilmington deceptively utilized the provisions of the Delaware Workers Compensation Act to compel plaintiff to attend a physical examination;

(iii) Defendant City of Wilmington knew or should have known that plaintiff could not be terminated until after the Police Pension Board Hearing;

(iv) Defendant City of Wilmington knew that plaintiff was terminated from employment on August 3, 2007 despite not having convened a Police Pension Board Hearing;

(v) Defendant City of Wilmington knew or should have known that its actions and the actions of its employees and/or agents would have a severe detrimental impact on plaintiff;

(vi) Defendant City of Wilmington knew that it could minimize or eliminate any harm to plaintiff by simply rescinding the August 3, 2007 termination and involuntary retirement until such time as the City Code requirements had been met;

(vii) Defendant City of Wilmington failed to take any steps to minimize or eliminate any harm to plaintiff caused by its own failure to comply with City Code requirements.

(d) Thus, the defendants, in failing to comply with the procedures set forth in the City Code §§39-126 and 39-214, unlawfully terminated plaintiff's employment, depriving her of the right to continued employment and failing to provide a meaningful opportunity to be heard by any decision maker prior to her termination on August 3, 2007.

38. The acts, as described above, by defendants Gillespie, Dr. Ampadu, and City of Wilmington, its agents and employees, were practiced either intentionally or with reckless indifference to the federally protected rights of the plaintiff.

39. As a direct and proximate result of the unlawful conduct of the defendants, its agents and employees, plaintiff was injured and has suffered a loss of income, including back pay and employment benefits, suffered loss of her twenty year police career, suffered severe personal embarrassment and has been battered emotionally and psychologically.

**WHEREFORE**, the plaintiff requests that the Court grant the following relief:

(a) enter a declaratory judgment that the acts and practices complained of herein were unlawful and violative of the Fourteenth Amendment to the United States Constitution and 42 U.S.C. §1983;

(b) issue a preliminary and permanent injunction to reinstate the plaintiff to her former employment and to enjoin the defendants from terminating plaintiff's employment unless the termination procedures employed by defendants comply with the minimum requirements of procedural due process under the Fourteenth Amendment and are followed accordingly;

(c) order the defendants, jointly and severally, to make whole, the plaintiff, who has been adversely affected by the violation of the constitutional rights described herein, by appropriate monetary damages, including, but not limited to, back pay and employment benefits, and compensation for all other injuries and losses proximately caused by the unlawful acts of the defendants;

(d) order the defendants, jointly and severally, to compensate the plaintiff for the infliction of emotional distress caused by defendants;

(e) enter a judgment against defendant Gillespie for punitive damages;

(f) enter a judgment against defendant Dr. Ampadu for punitive damages;

(g) award plaintiff reasonable attorney's fees, costs of this action, and pre- and post-judgment interest for this action.

(h) grant such other and further relief as the court deems necessary and proper.

                        RONALD STONER, P.A.

                        */s/ Ronald Stoner*
                        **Ronald Stoner, Esq., DE 2818**
                        1107 Drummond Plaza
                        Newark, DE 19711
                        (302) 369-6400
                        Attorney for Plaintiff

Dated: 4/3/08

%JS 44 (Rev. 12/07)

# CIVIL COVER SHEET

08-185

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

## I. (a) PLAINTIFFS
BOWERS, DENISE

## DEFENDANTS
CITY OF WILMINGTON, CITY OF WILMINGTON, MONICA GONZALEZ GILLESPIE, DIRECTOR, CITY OF WILMINGT(

(b) County of Residence of First Listed Plaintiff: NEW CASTLE
(EXCEPT IN U.S. PLAINTIFF CASES)

County of Residence of First Listed Defendant: NEW CASTLE
(IN U.S. PLAINTIFF CASES ONLY)
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE LAND INVOLVED.

(c) Attorney's (Firm Name, Address, and Telephone Number)
RONALD STONER, ESQ.
1107 POLLY DRUMMOND PLAZA
NEWARK, DE 19711 (302) 369-6400

Attorneys (If Known)

## II. BASIS OF JURISDICTION (Place an "X" in One Box Only)

☐ 1 U.S. Government Plaintiff
☐ 3 Federal Question (U.S. Government Not a Party)
☒ 2 U.S. Government Defendant
☐ 4 Diversity (Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (Place an "X" in One Box for Plaintiff and One Box for Defendant) (For Diversity Cases Only)

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☒ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☒ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT (Place an "X" in One Box Only)

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | PERSONAL INJURY | PERSONAL INJURY | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 362 Personal Injury - Med. Malpractice | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal 28 USC 157 | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 365 Personal Injury - Product Liability | ☐ 625 Drug Related Seizure of Property 21 USC 881 | | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 630 Liquor Laws | PROPERTY RIGHTS | ☐ 450 Commerce |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | | ☐ 640 R.R. & Truck | ☐ 820 Copyrights | ☐ 460 Deportation |
| ☐ 151 Medicare Act | ☐ 340 Marine | PERSONAL PROPERTY | ☐ 650 Airline Regs. | ☐ 830 Patent | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans) | ☐ 345 Marine Product Liability | ☐ 370 Other Fraud | ☐ 660 Occupational Safety/Health | ☐ 840 Trademark | ☐ 480 Consumer Credit |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 371 Truth in Lending | ☐ 690 Other | | ☐ 490 Cable/Sat TV |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability | ☐ 380 Other Personal Property Damage | LABOR | SOCIAL SECURITY | ☐ 810 Selective Service |
| ☐ 190 Other Contract | ☐ 360 Other Personal Injury | ☐ 385 Property Damage Product Liability | ☐ 710 Fair Labor Standards Act | ☐ 861 HIA (1395ff) | ☐ 850 Securities/Commodities/Exchange |
| ☐ 195 Contract Product Liability | | | ☐ 720 Labor/Mgmt. Relations | ☐ 862 Black Lung (923) | ☐ 875 Customer Challenge 12 USC 3410 |
| ☐ 196 Franchise | | | ☐ 730 Labor/Mgmt.Reporting & Disclosure Act | ☐ 863 DIWC/DIWW (405(g)) | ☐ 890 Other Statutory Actions |
| REAL PROPERTY | CIVIL RIGHTS | PRISONER PETITIONS | ☐ 740 Railway Labor Act | ☐ 864 SSID Title XVI | ☐ 891 Agricultural Acts |
| ☐ 210 Land Condemnation | ☐ 441 Voting | ☐ 510 Motions to Vacate Sentence | ☐ 790 Other Labor Litigation | ☐ 865 RSI (405(g)) | ☐ 892 Economic Stabilization Act |
| ☐ 220 Foreclosure | ☒ 442 Employment | Habeas Corpus: | ☐ 791 Empl. Ret. Inc. Security Act | FEDERAL TAX SUITS | ☐ 893 Environmental Matters |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/ Accommodations | ☐ 530 General | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 894 Energy Allocation Act |
| ☐ 240 Torts to Land | ☐ 444 Welfare | ☐ 535 Death Penalty | IMMIGRATION | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 895 Freedom of Information Act |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities - Employment | ☐ 540 Mandamus & Other | ☐ 462 Naturalization Application | | ☐ 900 Appeal of Fee Determination Under Equal Access to Justice |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities - Other | ☐ 550 Civil Rights | ☐ 463 Habeas Corpus - Alien Detainee | | ☐ 950 Constitutionality of State Statutes |
| | ☐ 440 Other Civil Rights | ☐ 555 Prison Condition | ☐ 465 Other Immigration Actions | | |

## V. ORIGIN (Place an "X" in One Box Only)

☒ 1 Original Proceeding
☐ 2 Removed from State Court
☐ 3 Remanded from Appellate Court
☐ 4 Reinstated or Reopened
☐ 5 Transferred from another district (specify)
☐ 6 Multidistrict Litigation
☐ 7 Appeal to District Judge from Magistrate Judgment

## VI. CAUSE OF ACTION
Cite the U.S. Civil Statute under which you are filing (Do not cite jurisdictional statutes unless diversity):
42 U.S.C. SECTION 1983
Brief description of cause: DEPRIVATION OF PLAINTIFF'S PROPERTY RIGHT TO CONTINUED EMPLOYMENT IN VIOLATION OF THE 14TH AMENDMENT DUE PROCESS CLAUSE

## VII. REQUESTED IN COMPLAINT:
☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23
DEMAND $
CHECK YES only if demanded in complaint:
JURY DEMAND: ☒ Yes ☐ No

## VIII. RELATED CASE(S) IF ANY
(See instructions):
JUDGE
DOCKET NUMBER

DATE: 4/3/08
SIGNATURE OF ATTORNEY OF RECORD

**FOR OFFICE USE ONLY**

RECEIPT #    AMOUNT    APPLYING IFP    JUDGE    MAG. JUDGE

AO FORM 85 RECEIPT (REV. 9/04)

United States District Court for the District of Delaware

Civil Action No.  _____ 0 8 - 1 8 5 _____

# ACKNOWLEDGMENT OF RECEIPT FOR AO FORM 85

## *NOTICE OF AVAILABILITY OF A UNITED STATES MAGISTRATE JUDGE TO EXERCISE JURISDICTION*

I HEREBY ACKNOWLEDGE RECEIPT OF \_\_\_3\_\_\_ COPIES OF AO FORM 85.

\_\_\_4/3/08_____    _____
(Date forms issued)                (Signature of Party or their Representative)

\_\_\_\_\_Ronald Stoner_____
(Printed name of Party or their Representative)

Note: Completed receipt will be filed in the Civil Action