IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

```
DENISE BOWERS,                     :
                                   :
          Plaintiff,               :
                                   :
     v.                            : Civil Action No. 08-185-JJF
                                   :
CITY OF WILMINGTON,                :
MONICA GONZALEZ GILLESPIE,         :
FRANKLIN AMPADU, M.D. and          :
OLUSEYI SENU-OKE, M.D., AND        :
ASSOCIATES                         :
                                   :
          Defendants.              :
                                   :
```

Ronald Stoner, Esquire, of RONALD STONER, P.A., Newark, Delaware.

Attorney for Plaintiff.

Gary W. Lipkin, Esquire, Assistant City Solicitor, CITY OF
WILMINGTON LAW DEPARTMENT, Wilmington, Delaware.

Attorney for Defendant City of Wilmington.

Barry M. Willoughby, Esquire and Teresa A. Cheek, Esquire, of
YOUNG CONAWAY STARGATT & TAYLOR, LLP, Wilmington, Delaware.

Attorneys for Defendant Monica-Gonzalez-Gillespie in her
Individual Capacity.

Mason E. Turner , Jr., Esquire, of PRICKETT, JONES & ELLIOTT,
P.A., Wilmington, Delaware.

Attorney for Defendant Franklin Ampadu, M.D.

Allyson Marie Britton, Esquire and Dennis D. Ferri, Esquire, of
MORRIS JAMES LLP, Wilmington, Delaware.

Attorneys for Defendant Oluseyi Senu-Oke, M.D.

**MEMORANDUM OPINION**

July /5, 2010
Wilmington, Delaware

**Farnan, District Judge.**

Pending before the Court are (1) a Motion to Dismiss filed by Defendant Monica Gonzalez-Gillespie ("Defendant Gonzalez-Gillespie") (D.I. 23) and (2) a Motion for Judgment on the Pleadings filed by Defendant City of Wilmington ("the City") (D.I. 25). For the reasons discussed, the Court will grant both Motions.

## I.    BACKGROUND

Plaintiff Denise Bowers ("Plaintiff") was hired on October 6, 1986, by the City of Wilmington to serve as a police officer in the Wilmington Police Department ("WPD"). (D.I. 63 ¶ 12.) In December 2005, Plaintiff sustained a right knee injury, allegedly during a combat shooting training exercise at the Police Firearms Range, which required medical treatment and temporarily made it impossible for Plaintiff to work. (Id. ¶ 13.) Plaintiff claims she received a letter on February 16, 2007, from Wilmington Police Chief Michael Szczerba informing her that she had been terminated and would be placed on retirement pension effective March 9, 2007. (Id. ¶ 14.) On February 21, 2007, Plaintiff, through her counsel, sent a letter to Defendant Gonzalez-Gillespie indicating that the WPD had failed to comply with City of Wilmington Code §§ 39-126 and 39-214 when it terminated Plaintiff without first giving her an opportunity to voice opposition and undergo required medical examinations. (Id. ¶

1

16.)

Plaintiff alleges that Defendant Gonzales-Gillespie responded by telephone to her letter and suggested that the Chief of Police "jumped the gun." Plaintiff contends that through her counsel, two letters were sent to Defendant Gonzalez-Gillespie requesting that she distribute notice to all relevant City departments that Plaintiff's involuntary retirement was rescinded. According to Plaintiff, it was not until March 15, 2007, that Chief Szczerba issued a letter stating that Plaintiff's involuntary retirement was rescinded until such time as the City Code provisions were fulfilled.

Subsequently, Plaintiff attended a scheduled medical examination with Dr. David Stephens, allegedly in response to a request from the WPD or a third-party administrator working on behalf of the WPD. (Id. ¶ 19.) She states that she believed that the purpose of the examination was to determine whether she was still eligible for worker's compensation. (Id.) Some time after the examination, Plaintiff received another letter from Police Chief Szczerba informing her that she would again be involuntarily retired effective August 3, 2007. (Id. ¶ 22.) Plaintiff's counsel again sent a letter to Defendant Gonzalez-Gillespie, contesting her involuntary retirement. Plaintiff received a letter from Defendant Gonzalez-Gillespie indicating that Plaintiff had to contact the City Treasurer in order to

2

contest the termination and involuntary retirement. Plaintiff contends that she was placed on involuntary retirement August 3, 2007, and her salary and employment benefits were abruptly halted. (Id. ¶¶ 24, 26.) On August 10, 2007, Plaintiff's counsel sent a letter to Defendant Gonzalez-Gillespie alleging that her rights were being intentionally violated because she was being denied an opportunity to be heard in opposition to her involuntary retirement. No response was received to this letter until September 14, 2007, when Defendant Gonzalez-Gillespie wrote to Plaintiff and indicated that she could present her opposition to her involuntary retirement to the Police Pension Board on October 4, 2007. (Id. ¶ 30.) Plaintiff alleges that no interim action was taken to remedy the City's error in terminating her prior to the hearing. (Id. at ¶ 31.)

Thereafter, Plaintiff's hearing date was rescheduled twice. The hearing finally occurred on January 10, 2008. (Id. ¶¶ 32-33.) The Police Pension Board affirmed Chief Szczerba's decision to place Plaintiff on involuntary retirement. (Id.)

Plaintiff filed her first Complaint in this action, brought under 42 U.S.C. § 1983, on April 3, 2008. (D.I. 1.) In it, she alleged that she was deprived of her procedural due process rights under the Fourteenth Amendment when she was wrongfully terminated by the WPD. (Id. ¶ 1.) Plaintiff filed an Amended Complaint on February 20, 2009. (D.I. 63.) The Amended

3

Complaint adds Oluseyi Senu-Oke, M.D. and Associates as a defendant, and it adds claims for wrongful termination, breach of contract, breach of implied covenant of good faith and fair dealing, and negligence. (D.I. 63 ¶¶ 40-44.) Otherwise, it is substantially the same as the original Complaint. On December 5, 2008, Defendant Gonzalez-Gillespie filed her Motion to Dismiss, (D.I. 23), and the City filed its Motion for Judgment on the Pleadings, (D.I. 25).

## II.   THE PARTIES' CONTENTIONS

Plaintiff contends that, by virtue of her twenty-year employment with the WPD, she had an expectation of continued employment that amounts to a property interest under Delaware law, and that this property interest is subject to the protections of the Due Process Clause of the Fourteenth Amendment. (D.I. 63 ¶¶ 37-38.) Plaintiff alleges that the actions of Defendants deprived her of this property right without due process, giving rise to an actionable claim under 42 U.S.C. § 1983. (Id. ¶ 39.)

With respect to Defendant Gonzalez-Gillespie, Plaintiff alleges, inter alia, that Defendant Gonzalez-Gillespie knew that Dr. Cynthia Heldt, Plaintiff's family doctor, had neither examined Plaintiff nor reviewed Plaintiff's medical records prior to Plaintiff's termination, and that Dr. Stephens only examined Plaintiff for worker's compensation purposes, not for an

4

involuntary retirement determination. (Id. ¶¶ 39(b)(v)-(vi).) Plaintiff further alleges that Defendant Gonzalez-Gillespie knew that Plaintiff was entitled to a hearing prior to being involuntarily retired. (Id. ¶¶ 39(b)(ii), (ix).) Plaintiff alleges that despite knowing these things, Defendant Gonzalez-Gillespie intentionally allowed Plaintiff's involuntary retirement to proceed, in violation of City of Wilmington Code §§ 39-126 and 39-214 and the Due Process Clause of the Fourteenth Amendment. (Id. ¶ 39(b)(x).)

As for the City's alleged wrongdoing, Plaintiff contends that the City could have prevented or minimized Plaintiff's harm. (Id. ¶ 39(c).) Specifically, Plaintiff alleges that the City engaged in the same wrongful acts as those described above with respect to Defendant Gonzalez-Gillespie. (See id. ¶¶ 39(c)(i)-(iv).) In addition, Plaintiff alleges that the City "deceptively utilized the provisions of the Delaware Workers Compensation Act to compel Plaintiff to attend a physical examination" as part of the series of acts which resulted in Plaintiff's termination. (Id. ¶ 39(c)(ii).)

Defendant Gonzalez-Gillespie responds that Plaintiff's action against her should be dismissed for three reasons. First, she contends that Plaintiff has failed to provide allegations supporting her claim that she had a property interest in her continued employment with the WPD. (D.I. 24 at 9.) Defendant

5

Gonzalez-Gillespie points out that under Delaware law, an employee is strongly presumed to be an employee-at-will for indefinite duration, in the absence of any agreement or circumstances to the contrary. (Id. at 10.) She contends that Plaintiff has alleged no basis for rebutting the presumption that Plaintiff was an at-will employee, able to be terminated at any time without cause, instead "relying on nothing more than her unilateral expectation of continued employment." (Id.) Second, Defendant Gonzalez-Gillespie contends that "[e]ven if Plaintiff had had a cognizable property interest in her job, she was afforded procedural due process that would have met any applicable constitutional standards." (Id. at 11.) In this regard, Defendant Gonzalez-Gillespie points out that Plaintiff received notice of her proposed termination for medical reasons in February and July 2007, and argues that Plaintiff "had ample opportunity to provide an opinion from a physician who had examined her and who had concluded that she was able to perform her job both before and after [Plaintiff was involuntarily retired]." (Id. at 11-12.) Defendant Gonzalez-Gillespie further contends that even if Plaintiff's allegations regarding any inaccuracies of medical reports or other deviations from the City Code are true, violations of these local procedural rules do not rise to the level of federal due process violations. In fact, Defendant Gonzalez-Gillespie argues that Plaintiff refused to

6

take advantage of the process afforded to her, and therefore, Defendants are not to blame. (Id. at 13.) Third, Defendant Gonzalez-Gillespie argues that she is entitled to qualified immunity. (Id. at 13-14.)

The City responds to Plaintiff's claims by stating that she has not alleged any facts establishing municipal liability under Section 1983. (D.I. 26 at 8.) Under Monell v. Dep't of Soc. Servs. of the City of N.Y., 436 U.S. 658 (1978), the City argues, a local government is immune from suit under 42 U.S.C. § 1983, unless the plaintiff alleges that the municipality had a policy or custom that caused constitutional injury. Here, the City contends that Plaintiff has failed to identify "any official City policy that led to her alleged deprivation of due process." (Id. at 9.) In fact, the City points out that Plaintiff's Complaint alleges that "it was the City employees' departure from said policies that caused her loss." (Id. at 9 (emphasis in original).) Because a municipality may not be held liable for the unlawful acts of its officers under a theory of respondeat superior and because "[t]he individuals involved in Plaintiff's termination were not decision-makers possessing final authority," the City argues that Plaintiff cannot satisfy the first prong of Monell. (Id. at 11-13.) The City further contends that Plaintiff "does not even attempt to plead the existence of any City custom that led to the alleged deprivation of her due

process." (Id. at 13.) Because "one instance referenced in the
Complaint cannot possible constitute a custom," the City contends
that Plaintiff cannot satisfy the second prong of Monell, and
therefore, her procedural due process claim against the City must
be dismissed. (Id. at 14.) In addition to these arguments, the
City has joined in the argument presented by Defendant Gonzalez-
Gillespie. (D.I. 34.)

## III. **LEGAL STANDARD**

### A. Motion To Dismiss

In considering a motion to dismiss filed under Federal Rule
of Civil Procedure 12(b)(6), the Court must accept all factual
allegations in the complaint as true and consider them in the
light most favorable to plaintiff. Erickson v. Pardus, 551 U.S.
89 (2007). A complaint need not contain detailed factual
allegations; however, "a plaintiff's obligation to provide the
grounds of his entitlement to relief requires more than labels
and conclusions, and a formulaic recitation of the elements of a
cause of action will not do." Bell Atl. Corp. v. Twombly, 550
U.S. 544, 555 (2007) (internal quotations and citations omitted).
The "[f]actual allegations must be enough to raise a right to
relief above the speculative level on the assumption that all of
the complaint's allegations are true." Id. at 547.

To survive a motion to dismiss, a complaint must allege
sufficient facts, accepted as true, to "state a claim to relief

8

that is plausible on its face." Id. at 570. A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009). In sum, "'stating . . . a claim requires a complaint with enough factual matter (taken as true) to suggest' the required element. This 'does not impose a probability requirement at the pleading stage,' but instead 'simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of' the necessary element." Phillips v. County of Allegheny, 515 F.3d 224, 234 (3d Cir. 2008) (quoting Twombly, 550 U.S. at 556).

    B.    Motion For Judgment On The Pleadings

    Under Rule 12(c), judgment will not be granted unless the movant clearly establishes that no material issue of fact remains to be resolved and that he or she is entitled to judgment as a matter of law. Jablonski v. Pan American World Airways, Inc., 836 F.2d 289, 290 (3d Cir. 1988) (internal quotations and citations omitted). A motion under Rule 12(c) is reviewed under the same standard as a motion to dismiss under Rule 12(b)(6). Turbe v. Government of the Virgin Islands, 938 F.2d, 427,428 (3d Cir. 1991).

## IV.  DISCUSSION

    To establish a Section 1983 claim, the plaintiff "must

9

demonstrate that the conduct complained of was committed by a person acting under state law and that the conduct deprived him [or her] of rights, privileges or immunities secured by the Constitution." Piecknick v. Pennsylvania, 36 F.3d 1250, 1256 (3d Cir. 1994) (internal quotations and citations omitted). Where, as here, Plaintiff "claims a procedural due process violation, [her] claim is dependent upon the denial of a constitutionally protected property or liberty interest." Id. Further, where "no property or liberty interest is implicated," courts need not reach the issue of qualified immunity in deciding a motion to dismiss. Id. at 1262 n.12.

In this case, Plaintiff bases her Section 1983 claim against Defendants on her alleged property interest in continued employment with the WPD. If Plaintiff has such a property interest, she cannot be deprived of it without due process. Cleveland Bd. of Educ. v. Loudermill, 470 U.S. 532, 538 (U.S. 1985). To have a property interest in continued employment, a person "must have more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it." Bd. Of Regents of State Colleges v. Roth, 408 U.S. 564, 577 (1972). Property interests may be created by state or federal statute, municipal ordinance or by an express or implied contract. Bishop v. Wood, 426 U.S. 341, 344 (1976).

10

A.    Whether Plaintiff Had A Constitutional Right To
      Continued Employment Under Delaware Law And The City Of
      Wilmington Code

Plaintiff does not assert a Delaware statute, but rather,

Plaintiff asserts three sections of the Wilmington Code, which

she contends provide the basis for finding that she has a

property interest in her continued employment with the WPD.

Specifically, Plaintiff relies on Sections §§ 39-126[1], 39-214[2]

---

[1] City of Wilmington Code § 39-126 provides, **"Placing
personnel of departments on pension list generally.** The chiefs
of police and fire shall have power, after competent medical
investigation, to order a member of the police or fire department
placed on the pension list in accordance with the laws governing
the payment of pensions to members of the departments. Subject to
such pension laws, the chiefs shall have power to dismiss a
member from the department, when, after competent medical
investigation, a member is certified to as physically unfit.  The
competent medical investigation shall be made by a board of
physicians, consisting of the surgeon for the police or fire
department of the city, the family physician of such police
officer or fireman, and a third reputable physician of the city,
to be selected by the other members of such board; such board
shall report in writing to the chief of police or fire the result
of such physical examination, together with a statement as to how
far, in the opinion of such board, the police officer or fire
fighter examined is incapacitated from performing regular active
duty in such department.  Upon receipt of the report of such
board of physicians, the chief of police or fire may take such
action as he may deem advisable based on the result of the
medical investigation."

[2] City of Wilmington Code § 39-214 provides, **Voluntary and
involuntary retirement; notice and hearing prerequisite to
retirement; physical examination and report.** No member of the
police department subject to this plan shall be retired until he
has been duly notified by the chief of police of his intention to
so retire him, and until he has had a fair opportunity of being
heard in opposition thereto; provided, that any member of the
police department subject to this plan deeming himself entitled
to the benefits of this division may make written application to
the chief of police for that purpose.  No member of the police

11

and 40-54[3] of the Wilmington Code. "A property interest in

_____

department shall be placed upon such retired list unless he shall
have first undergone an examination as to his physical condition
to be made by a board of physicians, consisting of the police
surgeon of the city, the family physician of such police officer,
and a third reputable physician of the city to be selected by the
other members of such board.  Such board shall report in writing
to the chief of police the results of such physical examination,
together with a statement as to how far, in the opinion of such
board, the officer examined is incapacitated from performing
regular active duty in the police department.  Upon the receipt
of such report of the board of physicians, the chief of police
may retire such officer in accordance with the provisions of this
division."

    [3]    Plaintiff also appears to assert Wilmington Code § 40-
54 as a basis for her claim.  Section 40-54 provides:

        (a) The city requires all employees to be
    physically and otherwise able to perform the duties of
    the position in question. All candidates who have
    received a bona fide offer of employment may be subject
    to physical examination to determine their ability to
    perform the duties of the position. Employees may be
    subject to physical examinations, provided such
    examinations are job-related and consistent with
    business necessity.

    (b) No employee shall hold any position in which he or
    she is physically or otherwise unable to perform fully
    the duties of the position without hazard to himself or
    others. Such a determination shall be made on a case-
    by-case basis and in light of the specific
    circumstances of the case.

    (c) It shall be the city's policy in regard to
    employees who are terminated from employment pursuant
    to this section to make such efforts as are consistent
    with the provisions of this chapter to consider such
    employees for employment in open positions in the city
    service for which the employees are qualified. The
    factors to be considered in this regard include, but
    are not limited to, the employee's length of service,
    quality of performance, other qualifications, and the
    availability of openings.

employment can . . . be created by ordinance[; however,] the sufficiency of the claim of entitlement must be decided by reference to state law." Bishop, 426 U.S. at 344. In Bishop, the Supreme Court examined a city ordinance in light of North Carolina law and held that the city ordinance at issue did not create a property interest in the plaintiff's continued employment.[4] Id. at 347. Examining North Carolina law, the Supreme Court stated that "an enforceable expectation of continued public employment . . . can exist only if the employer, by statute or contract, has actually granted some form of guarantee." Id. at 345. The Supreme Court noted that "[o]n its face the [City of Marion, North Carolina,] ordinance on which petitioner relies may fairly be read as conferring such a guarantee. However, . . . the ordinance may also be construed as granting no right to continued employment but merely conditioning an employee's removal on compliance with certain specified procedures." Id. at 345. In the absence of a state supreme court decision directly on point, the Supreme Court concluded

---

[4] The disputed ordinance in Bishop read: "Discharge. A permanent employee whose work is not satisfactory over a period of time shall be notified in what way his work is deficient and what he must do if his work is to be satisfactory. If a permanent employee fails to perform work up to the standard of the classification held, or continues to be negligent, inefficient, or unfit to perform his duties, he may be dismissed by the City Manager. Any discharged employee shall be given written notice of his discharge setting forth the effective date and reasons for his discharge if he shall request such a notice." Id. at 344 n.5.

13

that the correct construction of the ordinance under North
Carolina law was that the "petitioner held his position at the
will and pleasure of the city." Id. (internal quotations
omitted). The Court reached this conclusion because under North
Carolina law, "nothing else appearing, a contract of employment
which contains no provision for the duration or termination of
employment is terminable at the will of either party irrespective
of the quality of performance by the other party." Id. at 346
n.9.

Under Delaware law, there is a "heavy presumption" that
employment, "unless otherwise expressly stated, is at-will in
nature with duration indefinite." Bailey v. City of Wilmington,
766 A.2d 477, 480 (Del. 2001). In the Court's view, the
Wilmington City Code provisions asserted by Plaintiff are like
the provisions in Bishop. They are procedural in nature and
"grant[] no right to continued employment but merely condition[]
an employee's removal on compliance with certain specified
procedures." Bishop, 426 U.S. at 345. With respect to Section
40-54 in particular, Plaintiff contends that "if City employees
can physically perform their employment positions, then the City
has no reason to terminate them." (D.I. 36 at 4). However, this
section contains no guarantee that such individuals will keep
their positions and again refers to the procedures used for
employee's terminated under that section. As the Third Circuit

14

has explained, "[t]he existence of a property interest in employment turns on the *substantive protection* afforded the employee under state law, *not the procedural protection*." Blanding v. Pa. State Police, 12 F.3d 1303, 1306 n.2 (3d Cir. 1993) (emphasis added). Accordingly, the Court concludes that Plaintiff does not have a property interest in continued employment with the WPD based on City of Wilmington Code §§ 39-126, 39-214 and 40-54.

B.      Whether Plaintiff Had A Constitutional Right To Continued Employment Under Principles Of Contract Law

With respect to a contract theory, the Court notes that Plaintiff does not make any allegations or claims based on the theory of implied contracts. Accordingly, the Court will only examine (1) whether Plaintiff has pled a breach of the implied covenant of good faith and fair dealing that governs all Delaware employment, and (2) whether Plaintiff has pled the existence of an express contract which gave her a property interest in her continued employment with the WPD.

1.      Implied Covenant Of Good Faith And Fair Dealing

In Delaware, a plaintiff may overcome the heavy presumption that she is an at-will employee by alleging that her employer breached the implied covenant of good faith and fair dealing. Merrill v. Crothall-American, Inc., 606 A.2d 96, 101 (Del. 1992).

15

Delaware law recognizes four such situations.[5] Here, Plaintiff appears to be alleging that the fourth type of breach occurred; specifically, that Defendants used a fraudulently prepared board of physicians report to create false grounds for her termination. (See D.I. 63 ¶¶ 19-25, 39(a)(i)-(viii), 39(b)(v)-(vi), 39(c)(i)-(ii).) However, a review of Plaintiff's Amended Complaint reveals that Plaintiff does not contest the board of physicians report's finding that she was unable to perform the essential functions of a full-duty WPD officer, the grounds for her termination. Instead, the only defects Plaintiff alleges are that Dr. Heldt had not examined her or her medical records, as claimed in the board of physicians report, and that Dr. Stephens had examined Plaintiff only for workers compensation purposes, not for involuntary retirement purposes. (D.I. 63, ¶ 27.) In other words, Plaintiff "has not alleged that the grounds of [her] dismissal were fictitious or fraudulent; rather, [s]he has alleged that the procedure followed by the department was improper." Bailey, 766 A.2d at 480 (emphasis in original). Under these circumstances, even accepting Plaintiff's allegations

---

[5] The four grounds are: (1) where the employee's termination was against public policy; (2) where the employer's misrepresentation of an important fact and the employee relied on that fact in deciding to accept a new position or remain at an old one; (3) where the employer's use of "its superior bargaining power to deprive an employee of identifiable compensation related to an employee's past service"; and (4) where the employer uses deceit, fraud, or misrepresentation to manipulate the employee's record and create false grounds for termination. Bailey, 766 A.2d at 480.

16

as true, as the Court must in deciding this Motion, "[t]he alleged procedural defects . . . cannot supply the aspect of fraud, deceit or misrepresentation to support a [claim] that the City [or Defendant Gonzalez-Gillespie] breached the implied covenant of good faith and fair dealing." Id. Accordingly, the Court concludes as a matter of law that Plaintiff cannot overcome the heavy presumption under Delaware law that her employment with the WPD was at-will. Therefore, Plaintiff cannot establish that she had a property right in her continued employment under the implied covenant of good faith and fair dealing doctrine.

2. Express Contract

"In the governmental context, . . . employment contracts that contain a 'just cause' provision create a property interest in continued employment." Wilson, 475 F.3d at 177 (internal citation omitted). In her Breach of Contract claim, Plaintiff alleges that "[t]he actions of the defendants . . . amounted to a breach of the employment contract in violation of the plaintiff's rights, which is actionable under 42 U.S.C. § 1983." (D.I. 63 ¶ 41.) However, nowhere in Plaintiff's Amended Complaint is there an allegation that her employment with the WPD was governed by a contract. The only other reference Plaintiff appears to have made to a contract is in her Answering Brief to Defendant Monica Gonzalez-Gillespie's Motion to Dismiss (D.I. 36). However, Plaintiff merely recites a summary of the law: "A contract which

17

establishes that termination can only be issued for cause may

create a property interest in continued employment. A collective

bargaining agreement that covers the employee creates a

cognizable property interest in that continued employment." (Id.

at 3-4 (internal citations omitted).) Plaintiff does not allege,

either in her Amended Complaint or in any briefing, that her

employment with the WPD was covered by a contract or collective

bargaining agreement. Accordingly, the Court concludes that

Plaintiff has not pled the existence of a contract that gave her

a right to continued employment with the WPD.[6]

In sum, the Court concludes that Plaintiff has not

established a protected property interest in continued employment

with the WPD, and therefore, the Court concludes that Plaintiff

has failed to make the threshold showing required to maintain a

_____

[6] The Court notes that this decision differs from that in a
similar action currently pending in the Court. See Hall v. City
of Wilmington, No. 08-186-GMS-MPT, 2009 WL 928465 (D. Del. Apr.
6, 2009). In Hall, the City's motion for judgment on the
pleadings was granted only in part. However, in the Hall case,
Defendant Gonzalez-Gillespie did not move to dismiss, as she did
here. Only the City moved for judgment on the pleadings, and it
did not present an argument that Hall did not possess a property
right in her continued employment with the WPD, as Defendant
Gonzalez-Gillespie did in this action. To the extent the Hall
decision discusses a property interest in employment, it notes an
argument by the plaintiff based on the Wilmington Code, but the
Hall decision does not decide whether the Code forms the basis
for a property interest. Id. at * 9 ("Although, Hall's wrongful
termination claim is not entirely clear, at this stage, she has
sufficiently alleged a § 1983 claim, albeit minimally.")

18

Section 1983 action against the City[7] and the remaining Defendants. See Sanford v. Stiles, 456 F.3d 298, 314 (3d Cir. 2006) ("[I]n order for municipal liability to exist, there must still be a violation of the plaintiff's constitutional rights.") Accordingly, the Court will grant Defendants' Motion To Dismiss.

## V.    LEAVE TO AMEND

In her response to Defendants' Motions, Plaintiff requests leave to amend her Amended Complaint. Although leave to amend is liberally granted, it may be appropriately denied if the record shows (1) undue delay, bad faith, or dilatory motives on the part of the movant, (2) the repeated failure to cure deficiencies by amendments that were previously allowed, (3) undue prejudice to the opposing party, or (4) futility of the amendment. Foman v. Davis, 371 U.S. 178, 182 (1962).

Here, Defendants filed their Motions, and thereafter, Plaintiff filed a Motion To Amend (D.I. 46), seeking, inter alia, to add a defendant and to add claims for breach of contract and breach of implied covenant of good faith and fair dealing. Despite having been presented with Defendants' arguments concerning the deficiencies in the original Complaint, Plaintiff failed to take any corrective measures in her Amended Complaint.

---

[7]    Even if Plaintiff could maintain a claim against the City based on Monell, the Court notes that Plaintiff has failed to plead any policy or custom in her Amended Complaint.

Notably, Plaintiff added a breach of contract claim in her Amended Complaint, yet never pled the existence of an express or implied contract in the first place. Plaintiff has not filed a proposed second amended complaint and has not suggested what further amendments she would make to enable her to state a claim. Lake v. Arnold, 232 F.3d 360, 374 (3d Cir. 2000) (concluding that plaintiffs' failure to provide a draft amended complaint formed an adequate basis on which to deny leave to amend). In these circumstances, the Court declines to grant Plaintiff leave to amend.

## VI. CONCLUSION

For the reasons discussed, the Court concludes that Plaintiff has failed to allege facts sufficient to show that she had a constitutionally-protected property interest in her continued employment with the WPD. Accordingly, the Court will grant Defendant Monica Gonzalez-Gillespie's Motion to Dismiss and Defendant City of Wilmington's Motion for Judgment on the Pleadings to the extent it incorporates the arguments of Defendant Gonzalez-Gillespie's Motion by virtue of the City's joinder in her brief.

An appropriate Order will be entered.